IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FAIRFAX COUNTY
SCHOOL BOARD,

               *Plaintiff*,

     v.

A.G., *et al.*,

               *Defendants*.

Case No. 1:21-cv-00840-MSN-JFA

## <u>MEMORANDUM OPINION & ORDER</u>

This matter comes before the Court on the parties' cross-motions for summary judgment based on the administrative record. *See* Dkt. Nos. 101, 103. Plaintiff challenges the Hearing Officer's decision in favor of defendants in the context of defendants' allegation that Fairfax County Public School System ("FCPS") failed to provide a free appropriate public education ("FAPE") as required by the Individuals with Disabilities Education Improvement Act ("IDEA"). For the reasons that follow, the Court GRANTS plaintiff's motion, DENIES defendants' motion, and partially VACATES the Hearing Officer's administrative decision.

## I.    Legal Standard

### A.    Standard of Review

Although IDEA cases are original civil actions, they are adjudicated based upon the record of the administrative proceedings. *Cnty. Sch. Bd. of Henrico Cnty. v. Z.P.*, 399 F.3d 298, 309 n.7 (4th Cir. 2005). Accordingly, judicial review "may be conducted on the administrative record even if there are disputed issues of material fact." *Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996). The parties have agreed that their cross-motions for summary judgment should be

based on the administrative record, which has been supplemented by additional documents developed since the administrative hearing. *See* Dkt. No. 33 at 4.

As the party challenging the administrative decision, FCPS bears the burden of establishing that the decision was erroneous. *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.), *cert. denied*, 502 U.S. 859 (1991). The United States Supreme Court has held that although a district court reviewing an administrative decision under the IDEA must "base its decision on the 'preponderance of the evidence,'" the IDEA also contains an "implied requirement that due weight shall be given" to administrative proceedings. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982). Accordingly, a district court reviewing a hearing officer's decision under the IDEA "conducts modified *de novo* review." *O.S. v. Fairfax Cnty. Sch. Bd.*, 804 F.3d 354, 360 (4th Cir. 2015) (internal quotations omitted).

"[F]actual findings made during the state administrative proceeding are entitled to a presumption of correctness, so long as the findings were 'regularly made.'" *Z.P.*, 399 F.3d at 305 (citing *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1992)). "Factual findings are not regularly made if they are reached through a process that is far from the accepted norm of a fact-finding process." *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty., Va.*, 516 F.3d 254, 259 (4th Cir. 2008) (quoting *Z.P.*, 399 F.3d at 305). In addition, "credibility determinations implicit in a hearing officer's decision are [ ] entitled to deference" by a reviewing court. *Z.P.*, 399 F.3d at 307. Because regularly made findings and credibility determinations are entitled to "due weight" and are considered "*prima facie* correct," if a district court chooses to depart from the administrative officer's findings, the court must explain the basis for its departure. *Doyle*, 953 F.2d at 105; *see also Board of Educ. v. Brett Y.*, 28 IDELR 460 (4th Cir. 1998) ("[T]he district court

adhered to the appropriate standard of review by providing well reasoned explanations for rejecting the ALJ's findings.").

### B.    Legal Framework

The IDEA requires states that receive federal funds for education to provide an eligible child with disabilities with a "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A). At the center of the IDEA's education delivery system is the Individualized Education Program ("IEP"). A student's IEP is a document that is created through collaboration between school staff and parents that "describes the child's unique needs and the state's plan for meeting those needs." *R.F. by & through E.F. v. Cecil Cnty. Pub. Sch.*, 919 F.3d 237, 241 (4th Cir. 2019) (citing *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017)). Under the IDEA, IEPs must include "a statement of the child's present levels of academic achievement and functional performance, . . . a statement of measurable annual goals, . . . a description of how the child's progress toward meeting the annual goals . . . will be measured, . . ., [and] a statement of the special education and related services and supplementary aids and services . . . to be provided to the child." 20 U.S.C. § 1414(d)(1)(A)(i). The IEP team is required to revise the IEP "as appropriate," and at least once a year, to address "lack of expected progress" and to account for "information about the child provided to, or by, the parents," among other factors. *Id.* § 1414(d)(4)(A).

If a public school cannot develop an IEP that provides a FAPE in the public school system, the IDEA requires the school district to assume the cost of educating the child in a private school that meets the child's educational and social service needs. 20 U.S.C. § 1412(a)(10)(B). Parents may be reimbursed for unilateral private placement when a court or hearing officer determines that (1) a school district failed to provide a FAPE and (2) the private placement was suitable. *Forest*

*Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009). The IDEA has a two-year limitations period. 20 U.S.C. § 1415(b)(6)(B); *see also Fairfax Cnty. Sch. Bd. v. Knight*, Case No. 1:05-cv-01472, 2006 WL 6209927, at *6 (E.D. Va. Aug. 23, 2006), *aff'd*, 261 Fed. App'x 606 (4th Cir. 2008) (parent may recover for only that conduct of the school district that was alleged to have occurred within two years prior to the filing date of the due process hearing request).

## II.     Factual Background[1]

A.G. is a high school senior currently enrolled at the McLean School. He is eligible for special education as a student with Autism, Specific Learning Disability, and "Other Health Impairment" on the basis of Attention Deficit Hyperactivity Disorder. *See* AR at 432-009. During A.G.'s early education, he spent time enrolled at both public and private schools. *Id.* His parents, however, unilaterally removed him to private school for the 2014–2015 school year, where he has remained: first at the Oakwood School from 2014–2019, and then at the McLean School beginning with the 2019–2020 school year. *Id.* at 432-015–16.

On October 29, 2019, A.G.'s parents retained counsel regarding A.G.'s special education needs. *Id.* at 432-017. Thereafter, in December of 2019, A.G.'s parents and their counsel engaged with FCPS regarding the special education services that FCPS could offer A.G. *Id.* Those efforts culminated with a March 5, 2020, determination that A.G. needed special education and related services. *See id.* at 400-013 ("[A.G.] was found eligible for special education services on March 5, 2020"). On May 6, 2020, FCPS developed an IEP that proposed placing A.G. at South Lakes High School, where A.G. would receive "105 hours per month of Autism services, including 90 hours in the special education setting and 15 hours in the general education classroom. In addition, [A.G.] would receive 2 hours per month of Speech and Language services in the special education

---

[1] For factual matters uncontested by the parties, the Court relies on the regularly made findings of Hearing Officer Peter Vaden, as reflected in his April 23, 2021, decision. *See* AR at 432-003–60.

setting." *Id.* at 432-021; *see also id.* at 98-001–32. The IEP also contained numerous additional supports, accommodations, and modifications. *Id.* at 432-021–22. It had a proposed start date of August 25, 2020. *Id.* at 432-022.

A.G.'s parents disagreed with the May 2020 IEP and, on May 11, 2020, their counsel informed FCPS that they believed A.G. required private day placement. *Id.* at 432-023. In response, FCPS approved additional evaluations of A.G. that took place between June and July of 2020. *Id.* at 432-024–25. On August 19, 2020, FCPS held an IEP meeting, attended by A.G.'s parents and their counsel, at which FCPS proposed a revised IEP that still identified South Lakes High School as the appropriate placement for A.G. *Id.* at 432-025–26; *see also id.* at 112-001–34. A.G.'s parents, through counsel, again disagreed with the proposed IEP and received funding from FCPS to obtain an Independent Educational Evaluation ("IEE") of A.G., to be completed by Dr. Michelle Eabon. *Id.* at 432-026. Dr. Eabon conducted a virtual interview of A.G. on August 25, 2020, and had A.G. perform "a battery of tests in September 2020." *Id.* at 432-026–27. On September 28, 2020, Dr. Eabon issued a written evaluation of A.G. *Id.*

On October 29, 2020, an FCPS IEP reevaluation committee (which included members of A.G.'s IEP team) reconvened to consider, *inter alia*, Dr. Eabon's report. *Id.* at 122-001 ("FCPS has received additional information through parent requested IEE's . . . and would like to consider additional areas of eligibility"). The IEP reevaluation committee determined that FCPS should conduct "a follow-up psychological evaluation [of A.G.] to consider additional areas of special education eligibility for [him]." *Id.* at 432-027. On December 3, 2020, School Psychologist Jennifer Min began evaluating A.G. *See id.* at 265-001 (identifying December 3, 2020, and January 5, 2021, as "Date of Evaluations"). FCPS then recessed for winter break on December 21, 2020, with classes resuming on January 4, 2021. *See* https://www.fcps.edu/calendars/2020-21-standard-

school-year-calendar. On January 5, 2021, Ms. Min completed her evaluation and report regarding A.G. *See* AR at 265-001.

The same day,[2] A.G.'s parents—through counsel—filed a request for a due process hearing "regarding [FCPS's] errors and omissions in the special education of [A.G.] pursuant to the [IDEA] and the corresponding federal and state regulations." *Id.* at 400-001. The complaint raised multiple allegations regarding FCPS's purported failure to provide A.G. with a free appropriate public education: (1) FCPS's May and August 2020 IEPs were insufficient; (2) FCPS erred "by not finding [A.G.] eligible for special education in the category of Specific Learning Disability"; (3) FCPS failed to provide A.G. with special education services for more than five years prior to March 5, 2020; (4) the May and August 2020 IEPs contained inappropriate levels of performance; and (5) FCPS improperly omitted a transition plan in its May and August 2020 IEPs. *Id.* at 400-011–19.

Two specific claims are of particular relevance here. First, in detailing the insufficiencies of FCPS's May and August 2020 IEPs, *see id.* at 400-013–15, A.G.'s parents alleged that FCPS denied A.G. a FAPE because the "May 2020 IEP and the August 2020 IEP [we]re not reasonably calculated to allow [A.G.] to make appropriate progress considering his individualized needs and circumstances." *Id.* at 400-011. Specifically, A.G.'s parents took issue with the fact that "FCPS['s] proposed IEPs placed [A.G.] at South Lakes High School during the 2020–21 school year[]." *Id.* at 400-013. The only IEPs identified in this context were those from May and August of 2020 and the complaint makes repeated reference to "[t]he 2020 IEPs." *See, e.g.*, *id.* at 400-018.

---

[2] The Court recognizes that the complaint itself is dated January 5, 2020, but presumes that the letterhead simply failed to account for the start of a new year.

Second, A.G.'s parents also argued that FCPS "violated the IDEA because it did not timely hold the initial IEP meeting" within thirty days of "'a determination that [A.G.] need[ed] special education and related services.'" *See id.* at 400-012 n.8 (quoting 34 CFR § 300.323(c)(1)). That determination date was March 5, 2020, meaning that A.G.'s parents believed FCPS had violated its duty to hold an *initial* IEP meeting by April 6, 2020. *Id.* The parents' request for a due process hearing contained no similar claim with respect to any later failure to timely reconvene the IEP team. Specifically, it contained no claim that FCPS had improperly failed to reconvene A.G.'s IEP team by the date of the due process request filing; nor was there any claim that—upon receipt of Dr. Eabon's September 28, 2020, report—FCPS had assumed a duty to do so by a date certain. All that was included on that topic was the following paragraph from the complaint's "Factual Background" section:

> FCPS convened a reevaluation meeting on October 29, 2020 to review Dr. Eabon's report. FCPS did not propose any changes to [A.G.]'s special education eligibility at the meeting. Nor did FCPS propose any changes to the IEPs.

*Id.* at 400-011.

The matter was assigned to Hearing Officer Peter Vaden and, from March 2–5, 2021, the parties virtually presented evidence at a multi-day due process hearing. *Id.* at 432-004. The "issues for determination in th[e] case, as certified in the January 13, 2021 Prehearing Order," were:

> Whether FCPS denied [A.G.] a free appropriate public education (FAPE) by not continuing its child-find obligations and providing equitable services to the student, when the student was placed by the parents in private schools, for more than five years prior to March 5, 2020;
>
> Whether FCPS denied [A.G.] a FAPE, beginning May 2020, by not identifying Specific Learning Disability as a disability classification;
>
> Whether FCPS denied [A.G.] a FAPE by not ensuring that its Individualized Education Programs (IEPs) developed for Student beginning May 2020 were appropriate in that the IEPs,

> Did not include annual goals in the areas of social skills, social engagement, vocabulary, life skills, typing, self-advocacy, handwriting, and communication/rigidity;
>
> Did not provide an appropriate statement of [A.G.]'s present levels of educational performance (PLOPs);
>
> Did not include accommodations that [A.G.] required, such as teacher provided notes, small group testing to minimize distractions and sensory issues, reduced assignments to emphasize quality over quantity, modeling of steps for multi-step tasks, word banks, use of a pencil grip and fidgets, and available space for sensory break in a non-instructional space;
>
> Did not provide detailed discussion of the appropriate least restrictive environment (LRE) for [A.G.] or of the data the IEP team used to reach its LRE determination;
>
> Did not provide for [A.G.]'s educational placement in a self-contained setting for all classes;
>
> Lacked an appropriate post-secondary transition plan.
>
> Whether FCPS denied [A.G.] a FAPE by proposing an unsuitable location of services for [A.G.] at [South Lakes High School] for the 2020–2021 school year;
>
> Whether FCPS denied [A.G.] a FAPE by not offering [A.G.] special education services or a special education placement at the last part of 2019–2020 school year or any extended school year services during the summer of 2020.

*Id.* at 432-007–08.

The parties collectively called sixteen witnesses in addressing these issues and then presented closing argument on March 12, 2021. *See id.* at 432-005–06. On April 23, 2021, the Hearing Officer rendered a decision that found in favor of FCPS on every point identified in the Prehearing Order. *See id.* at 432-003–60. The Hearing Officer found that A.G.'s parents had "not met their burden of persuasion that, based upon the information available to the FCPS IEP teams at the time the IEPs were created in May and August 2020, FCPS'[s] proposal to place [A.G.] at [South Lakes High] School was inappropriate." *Id.* at 432-053.

The Hearing Officer, however, ruled in favor of A.G.'s parents on the following ground: he found that "within a reasonable time after receipt of [Dr. Eabon]'s IEE evaluation report, at least by the end of FCPS 2020–2021 winter break, FCPS had a duty to reconvene [A.G.]'s IEP team to review the IEE report and to revise [A.G.]'s IEP to provide an appropriate location of services." *Id.* FCPS's "failure to do so," in the eyes of the Hearing Officer, "was a denial of FAPE." *Id.* Accordingly, the Hearing Officer ordered FCPS to reimburse A.G.'s parents for the tuition they paid the McLean School "from the end of the 2020–2021 winter break through the [date of decision]" and to "fund [A.G.]'s placement [at the McLean School] through the end of the private school's 2020–2021 school year." *Id.* at 432-059.

On July 19, 2021, FCPS filed the instant lawsuit in this Court challenging the Hearing Officer's decision. *See* Dkt. No. 1. On August 13, 2021, A.G.'s parents filed a counterclaim seeking an award of attorneys' fees and expenses incurred in connection with the prior and instant proceedings. *See* Dkt. No. 12. On May 27, 2022, the parties each moved for Judgement on the Administrative Record. *See* Dkt. Nos. 101, 103. And on August 26, 2022, the parties presented oral argument on those motions. *See* Dkt. No. 115. Throughout the pendency of this case A.G. has remained at the McLean School pursuant to the "stay put"[3] provision of the IDEA and its implementing regulations.

---

[3] "The pendent placement safeguard—or stay-put provision—. . . provides, in relevant part, that: 'during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed.'" *M.R. v. Ridley Sch. Dist.*, No. CIV.A. 11-2235, 2012 WL 3279230, at *3 (E.D. Pa. Aug. 13, 2012), *aff'd*, 744 F.3d 112 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(j)). "The United States Supreme Court has described this language as 'unequivocal,' in that it plainly states that 'the child *shall* remain in the then current educational placement.'" *Id.* (quoting *Honig v. Doe,* 484 U.S. 305, 323 (1988) (internal quotation marks omitted)). "The provision functions, in essence, as an automatic preliminary injunction." *Id.* (internal citations omitted).

### III.    Analysis

The parties' cross motions for judgment on the administrative record are before the Court. Both address the Hearing Officer's April 2021 decision, as well as A.G.'s parents' request for attorneys' fees. FCPS argues that the Hearing Officer's April 2021 decision should be overturned because it: (1) impermissibly awarded A.G. relief on a claim not made in his due process complaint, *i.e.*, that FCPS denied A.G. a FAPE by failing to reconvene the IEP team and revise A.G.'s IEP by the end of winter break 2020–2021; (2) decided that issue incorrectly notwithstanding the fact that A.G. did not raise it; and (3) improperly found that South Lakes High School was not an appropriate placement for A.G. from the end of winter break 2020–2021 forward. *See* Pl. Br. (Dkt. No. 104) at 14–26. In addition, FCPS argues that A.G.'s parents are not entitled to the attorneys' fees they seek given their limited success before the Hearing Officer and their counsel's practice of block billing. *Id.* at 26–30.

A.G.'s parents, in turn, argue that the Hearing Officer: (1) properly identified South Lakes High School as an inappropriate placement school; and (2) correctly found the McLean School was an appropriate placement school. *See* Defs.' Br. (Dkt. No. 102) at 5–14. In addition, A.G.'s parents argue that they are entitled to attorneys' fees given the ultimate outcome of the administrative proceedings. *Id.* at 15–26.

The threshold and dispositive issue before the Court is whether the Hearing Officer reached an issue not raised by either party when he found that FCPS denied A.G. a FAPE when, "at least by the end of FCPS['s] 2020-2021 winter break," it failed to "reconvene [A.G.]'s IEP team to review [Dr. Eabon's September 2020] report" and "revise [A.G.]'s IEP to provide an appropriate location of services." AR at 432-053. For the following reasons, the Court finds that the Hearing Officer erred and concludes that this portion of his decision must be vacated.

10

### A.      What a Hearing Officer May Adjudicate at a Due Process Hearing

"Under the IDEA, the subject matter of a due process hearing is limited to those issues that were raised in the due process complaint by the party requesting the hearing." *District of Columbia v. Pearson*, 923 F. Supp. 2d 82, 87 (D.D.C. 2013); *see also id.* (collecting cases); 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [due process complaint], unless the other party agrees otherwise."); 34 C.F.R. § 300.511(d) (same). Thus, "where an issue 'was not raised in the due process complaint, was not identified as an issue during the pre-hearing conference, nor was it mentioned in the pre-hearing order,' the issue could not be raised *sua sponte* by the hearing officer following the due process hearing in the hearing officer's determination." *M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 39 (D.D.C. 2013) (quoting *Pearson*, 923 F. Supp. 2d at 87–88) (alterations adopted); *see also Hawaii Dept. of Educ. v. D.K. ex rel. N.K.*, Case No. 05-00560, 2006 WL 1646093, at *4 (D. Haw. June 6, 2006) (quoting *Board of Education of the Green Local School District v. Redovian*, 18 IDELR 1092, 1094 (E.D. Ohio 1992) (the hearing officer erred when he "inject[ed]" an issue that was "never raised" in the student's request for a hearing because "the school district had no notice" of the issue and no "chance to defend itself against it")).

### B.      The Issues Presented in the Due Process Request and Hearing

On January 5, 2021, A.G.'s parents—through counsel—filed their request for a due process hearing and challenged the sufficiency of FCPS's May and August 2020 IEPs insofar as both IEPs "placed [A.G.] at South Lakes High School during the 2020–21 school year[]." AR at 400-013. On January 13, 2021, the Hearing Officer set forth that issue in his Prehearing Order as concerning "[w]hether FCPS denied [A.G.] a FAPE by proposing an unsuitable location of [s]ervices at South Lakes High School for the 2020–2021 school year[.]" AR at 407-002. The Hearing Officer

11

repeated that formulation of the issue on January 27, 2021, through a ruling that denied FCPS's motion to dismiss the parents' request for a due process hearing. *See* AR at 416-002. And on April 23, 2021, the Hearing Officer entered his decision addressing whether "FCPS den[ied] [A.G.] a FAPE by proposing an unsuitable location of services at [South Lakes High School] for the 2020–2021 school year." *See* AR at 432-008, 432-047–51.

Thus, at each point in the proceedings, A.G.'s parents specifically challenged the suitability of South Lakes High School as an "appropriate placement" or "location" for A.G. during the 2020–21 school year. Moreover, those challenges focused on the proposed placement at South Lakes High School as contained in the May and August 2020 IEPs. *See* AR at 400-013 (including placement argument under heading that challenged May and August 2020 IEPs); AR at 322-036 ("The question here is whether [A.G.] . . . was offered a free appropriate public education by Fairfax County Schools when it issued the May 2020 IEP and again when it issued the August 2020 IEP. We contend and we believe the evidence will demonstrate that those IEPs did not . . . because they did not . . . provide an appropriate placement."). And within that context, the focus was and remained primarily on "class size concerns." AR at 400-013.

### C.    The Hearing Officer's Decision on the Issue

The Hearing Officer's decision reflects this same focus on the May and August 2020 IEPs. His discussion of South Lakes High School's suitability as a location begins: "In the proposed May 2020 and August 2020 IEPs, FCPS designated [South Lakes High School] . . . as the school location to implement [A.G.]'s IEP. . . . The parents' burden in this case was to establish that FCPS'[s] proposal to place [A.G.] at [South Lakes High School] for the 2020-2021 school year was not reasonably calculated to enable [A.G.] to make appropriate progress." AR at 432-047–48.

12

And here, the only placement "proposal[s]" to consider were contained in the May and August 2020 IEPs that A.G.'s parents rejected and then challenged in their due process complaint.

The Hearing Officer found the May and August IEPs did not violate the IDEA based on the information available to FCPS at the time they were developed. AR at 432-052–53  (citing *O'Toole ex rel. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233*, 144 F.3d 692, 701–02 (10th Cir. 1998) (observing that "[n]either the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement" and holding "the measure and adequacy of an IEP can only be determined as of the time it is offered to the student")).  On that point, the Hearing Officer specifically held that A.G.'s parents had "not met their burden of persuasion that, based upon the information available to the FCPS IEP teams at the time the IEPs were created in May and August 2020, FCPS'[s] proposal to place [A.G.] at [South Lakes High School] was inappropriate." AR at 432-053.

FCPS argues that the Hearing Officer's "decision should have stopped there" because by that point the Hearing Officer had resolved the issue that was before him, *i.e.*, whether the May and August 2020 IEPs proposed an "unsuitable location" for the 2020–2021 school year. Pl. Br. at 15. But the Hearing Officer continued his analysis to reach what he acknowledged was a decidedly "separate question" when he found by a preponderance of the evidence that, on the date of his decision, South Lakes High School could "not *now* be considered reasonably calculated to enable [A.G.] to make progress appropriate in light of his circumstances." *See* AR at 432-051–52 . Key to that conclusion was the Hearing Officer's decision to credit Dr. Eabon's expert testimony that: (1) A.G. was "extremely susceptible to being overstimulated"; (2) "to be able to access an education, [A.G.] mostly need[ed] a small classroom environment where there [wa]s little outside distraction, where there [wa]s not noise in the hallways as people [we]re changing classes and

13

where there [wa]s not that much going on outside the window"; and (3) "it would be very difficult for [A.G.] to negotiate a large campus with lots of people and that even sitting in class thinking about going into a big crowded hallway between classes would be overstimulating." AR at 432-050.

This testimony, however, presented entirely new information to the parties. *See* AR at 432-051 ("it appears that [Dr. Eabon]'s opinion about the inappropriateness of a large school campus for [A.G.] was not communicated to FCPS before [she] testified at the due process hearing on March 3, 2021"). Indeed, Dr. Eabon's September 28, 2020, report did not similarly focus on (or even mention) the environment A.G. needed outside of the classroom. *See* AR at 115-007 (A.G., "by his history, has seriously struggled in learning environments which are not small-group instruction. . . . He can focus intensely for about 45 minutes before needing a break and without supervision. However, beyond that his mental stamina becomes depleted and he becomes vulnerable to the intrusion of distraction from within and without. These kinds of attention deficits . . . are best dealt with environmentally with a small learning environment, high structure and scripting, at most times through the day 1:1 instruction . . ."); *see also id.* at 115-008 ("By history, small group instruction has best served [A.G.] . . . ."). Nonetheless, apparently conflating Dr. Eabon's September 28, 2020, report with her March 3, 2021, expert testimony, the Hearing Officer determined "that within a reasonable time after receipt of [Dr. Eabon]'s [September 28, 2020] evaluation report, at least by the end of FCPS 2020-2021 winter break, FCPS had a duty to reconvene [A.G.]'s IEP team to review [Dr. Eabon's September 28, 2020] report and to revise [A.G.]'s IEP to provide an appropriate location of services. FCPS['s] failure to do so was a denial of FAPE." AR at 432-053.

14

**D.      The Issue Before This Court**

FCPS argues that the Hearing Officer's decision to inject a "failure to reconvene" theory into the dispute constitutes reversible error. The Court agrees and finds that A.G.'s parents offer no compelling argument to the contrary.

*First*, A.G.'s parents contend that their due process complaint was subject to "minimal pleading standards" and that they met those standards with respect to a "failure to reconvene" claim. Defs. Opp. (Dkt. No. 108) at 11. The Court disagrees. A.G.'s parents may not capitalize on permissive pleading standards where—as here—they previously stated: "we were very careful in drafting the due process complaint." AR at 326-022; *see also Pearson*, 923 F. Supp. 2d at 88 ("defendant arguing [certain] issues in the complaint with such specificity demonstrates that other issues . . . could have been introduced with the same level of detail; the fact that they were not indicates that they were not 'implicitly' included in the complaint"). The fact that A.G.'s parents did include an argument regarding FCPS's alleged failure to "timely hold [an] *initial* IEP meeting" but made no such claim with respect to FCPS's failure to timely reconvene the IEP team further underscores that conclusion. *See* AR at 400-012 n.8 (emphasis added). Likewise, the parents' argument that they "expressly raised FCPS' failure to make changes to [A.G.]'s IEP after it received Dr. Eabon's detailed report" is unconvincing. Defs. Opp. at 6. The sole language they cite comes from the factual overview they provided in their complaint, where A.G.'s parents simply noted that "FCPS convened a reevaluation meeting on October 29, 2020 to review Dr. Eabon's report" but "did not propose any changes to [A.G.]'s special education eligibility at the meeting." *Id.*  That factual assertion makes no reference to untimeliness and is insufficient to identify the issue that the Hearing Officer relied upon to find FCPS in violation of the IDEA.

*Second*, there was no temporal bar to the parents' ability to raise a failure to reconvene claim in their filing. The Hearing Officer decided that FCPS impermissibly failed to reconvene A.G.'s IEP team "at least by the end of FCPS 2020–2021 winter break." AR at 432-053. That winter break ended on Friday January 1, 2021, and classes resumed the following Monday, January 4, 2021. *See* https://www.fcps.edu/calendars/2020-21-standard-school-year-calendar. Therefore, the Hearing Officer's decision establishes that he found FCPS was obligated to reconvene A.G.'s IEP team before January 4, 2021. Because A.G.'s parents filed their request for a due process hearing after that date, it is clear that A.G.'s parents failed to include any such claim even though one was available to them.

Accordingly, the Court finds that A.G.'s parents did not present a "failure to reconvene" theory to the Hearing Officer despite having the opportunity and capability to do so.[4] The question therefore turns on whether, "[e]ven if [the parents' request for a due process hearing] had not raised FCPS'[s] failure to reconvene the IEP team after receiving Dr. Eabon's report, the Hearing Officer was within his authority to address the issue." Defs. Opp. at 7. In support, A.G.'s parents cite to 8 Va. Admin. Code 20-81-210(F)(6), which provides: "The special education hearing officer has the discretionary authority to permit either party to raise issues at the hearing that were not raised in the notice by the party . . . in light of particular facts and circumstances of the case." That

---

[4] The transcript from the closing argument confirms that FCPS's failure to reconvene the IEP team before January 4, 2021 (and in response to Dr. Eabon's report) was not a live issue pursued by the parties. There, the Hearing Officer interrupted A.G.'s parents' counsel to ask him: "If I want to make a ruling that the IEP team got it wrong, then I have to know what data was presented to the IEP team that they misinterpreted or failed to concentrate or focus on. And I know . . . you're saying Dr. Sterne's 2018 report. Is there anything else that the IEP team *should* have had that would have affected either the goals that they developed or the services that they agreed to provide." AR at 326-036 (emphasis added); *see also* AR at 326-051 (Hearing Officer: "with regard to the information that was before the IEP team in May of 2020, what did they have that said [A.G.] cannot be in a large public school environment?" Mr. Belkowitz: "Dr. Sterne's report was pretty blunt about it."); AR at 326-059 (Mr. Belkowitz: "So all of this entire environment [at South Lakes High School] is becoming overwhelming to all of the needs that are identified in the reports and materials *that were available* to FCPS when they did the *May* IEP, and as well as the iteration that was available when they reconvened and considered more information when they did the *August* IEP.") (emphases added).

provision conflicts with the federal statute and regulations applicable to the IDEA. *See* 20 U.S.C. § 1415(f)(3)(B) ("The party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the [due process complaint], unless the other party agrees otherwise."); 34 CFR § 300.511(d) (same). Moreover, 8 Va. Admin. Code 20-81-210(F)(6) only authorizes the hearing officer to consider an issue not raised in the notice if raised *by one of the parties* during the hearing. The record is clear that it was the Hearing Officer himself, not either party, who raised this specific issue. Accordingly, 8 Va. Admin. Code 20-81-210(F) does not apply.

Because the Hearing Officer determined *sua sponte* that FCPS denied A.G. a FAPE through the IEP team's purported failure to timely reconvene without providing the parties the opportunity to be heard on the issue, the decision was in error. *See M.O.*, 20 F. Supp. 3d at 39 (quoting *Pearson*, 923 F. Supp. 2d at 87–88 ("where an issue 'was not raised in the due process complaint, was not identified as an issue during the pre-hearing conference, nor was it mentioned in the pre-hearing order,' the issue could not be raised *sua sponte* by the hearing officer following the due process hearing in the hearing officer's determination")) (alterations adopted); *see also D.K. ex rel. N.K.*, 2006 WL 1646093, at *4 (the hearing officer erred when he "inject[ed]" an issue that was "never raised" in the student's request for a hearing because "the school district had no notice" of the issue and no "chance to defend itself against it").

The substantive challenges that FCPS raises regarding the Hearing Officer's "failure to reconvene" decision illuminates why it is sound policy to prevent Hearing Officers from *sua sponte* raising dispositive issues. The Hearing Officer's decision was premised on his determination that "within a reasonable time after receipt of [Dr. Eabon's September 28, 2020] evaluation report, at least by the end of FCPS 2020–2021 winter break, FCPS had a duty to

reconvene [A.G.]'s IEP team to review [Dr. Eabon's] report and to revise [A.G.'s] IEP to provide an appropriate location of services." AR at 432-053. That conclusion is without legal support and contrary to the factual record.

"The IDEA simply requires [FCPS] to 'review the child's IEP periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved' and to 'revise the IEP as appropriate to address' any lack of expected progress, the result of any reevaluation, new information from the parents, or other matters." *MN on behalf of EN v. Katonah Lewisboro School District*, Case No. 19-cv-06793, 2020 WL 7496435, at *12 (S.D.N.Y. Dec. 21, 2020) (quoting 20 U.S.C. § 1414(d)(4)(A)) (alterations adopted). "Thus, there is a statutory mandate to revisit the IEP annually, but there is no requirement that [the District's Committee on Special Education] reconvene whenever additional information comes to its attention." *Id.*; *see also Bd. of Educ. of Montgomery Cnty. v. Brett Y*, 155 F.3d 557, at *6 n.14 (4th Cir. 1998) (quoting 34 C.F.R. § 300.343 note (1997) ("'the timing of meetings to develop, review, and revise IEPs is left to the discretion of each agency' and '[m]eetings may be held any time throughout the year, as long as IEPs are in effect at the beginning of each school year'")); *MN*, 2020 WL 7496435, at *12 (finding that a school district satisfied its obligations to timely respond to new information provided by a student's parents when it considered an October 2014 IEE at the annual IEP review meeting held seven months later).[5] Thus, the Hearing Officer erred when he concluded that FCPS denied A.G. a FAPE when it did not reconvene A.G.'s IEP team within three months of receiving Dr. Eabon's report.

---

[5] The Court notes that the Hearing Officer cited *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007) for the proposition that the "IDEA requires IEP team to revise the IEP when appropriate to address certain information provided by the parents." *See* AR at 432-053. And that is true. But what the Hearing Officer failed to acknowledge was the fact that the *Winkelman* opinion included that statement solely through citation to 20 U.S.C. § 1414(d)(4)(A). Thus, the referenced duty to revise when appropriate was not a blanket statement of an ongoing duty but instead was one that fits within the framework discussed in the cases cited above.

The Hearing Officer's legal error was further compounded by the fact that the record reflects that FCPS did timely respond to Dr. Eabon's report. Dr. Eabon issued her report on September 28, 2020. AR at 115. Upon receiving the report, FCPS held a "triennial reevaluation meeting" on October 29, 2020, after which FCPS "proposed updated testing [for A.G.] in order to proceed to eligibility and to address [issues] related to academic and social/emotional testing." AR at 131-001. Specifically, they decided to conduct "a follow-up psychological evaluation [of A.G.] to consider additional areas of special education eligibility for [him]." *Id.* at 432-027. Accordingly, Ms. Min evaluated A.G. on December 3, 2020, and January 5, 2021, and issued a confidential report of psychological evaluation the day after FCPS resumed classes following the 2020–21 winter break. *Id.* at 131-001. In response, FCPS held a special education eligibility meeting on January 19, 2021, where A.G. was found eligible for additional special education services. *See* AR at 137-001. On February 24, 2021, FCPS reconvened A.G.'s IEP team and modified his IEP in response. *See* AR at 434 (Dkt. No. 60-1). Thus, FCPS acted upon Dr. Eabon's September report within a month of receiving it (and continued to do so through the 2020–21 winter break) even if the IEP team was not officially reconvened until the following February.

The Hearing Officer was aware of this response by FCPS but provided no explanation for why he found it insufficient and untimely. *See* AR at 324-185 (transcript of testimony that FCPS held a meeting to reconsider A.G.'s needs weeks after receiving Ms. Min's report); AR at 324-278 (transcript of testimony that FCPS updated A.G.'s IEP during the last week of February 2021 in response to Dr. Eabon's and Ms. Min's reports); and AR 432-050–51 (written opinion's remark regarding the value of Ms. Min's report). Indeed, the Hearing Officer provided no basis for finding either that (1) FCPS should have reconvened the IEP team before Ms. Min had finished her evaluation; or (2) Ms. Min should have completed her evaluation sooner. And because A.G.'s

parents did not raise the "failure to reconvene" issue themselves, the parties had no opportunity to meaningfully present argument on either of those findings, each of which was necessary to the Hearing Officer's ultimate conclusion. If FCPS had been given such an opportunity, the briefing before this Court demonstrates that the Hearing Officer would have been asked to engage with FCPS's procedural and substantive response to Dr. Eabon's report in a much more thorough manner than he did here. By basing his decision on a claim not raised by either party, he deprived FCPS of its right to present any such argument.[6]

## IV.   CONCLUSION

For all of these reasons, the Court vacates the portion of the Hearing Officer's decision that found FCPS violated the IDEA by failing to timely reconvene A.G.'s IEP team. And because that was the sole basis upon which  the Hearing Officer ruled in favor of A.G., the additional arguments raised by FCPS and the parents' request for attorney's fees are moot. *See Lamar Consol. Indep. Sch. Dist. v. J.T. b/n/f Apr. S.*, 577 F.Supp.3d 599, 609 (S.D. Tex. 2021) (reversing Hearing Officer and then denying request for attorney's fees because parents no longer were "a prevailing party entitled to an award of attorney fees").

---

[6] In addition, it is clear from the administrative record and the Hearing Officer's decision that the physical size of South Lakes High School and the level of hallway activity that takes place there factored heavily into his ultimate conclusion regarding that school's suitability. The testimony addressing those points, however, arose for the first time at the due process hearing and would have been irrelevant in assessing the adequacy of South Lakes High School while that school was not back to full-time, in-person attendance. This, too, is an area that did not receive the attention it deserved by virtue of the fact that the Hearing Officer addressed it without the benefit of a full response from FCPS or A.G.'s parents.

*        *        *

Accordingly, it is hereby **ORDERED** that plaintiff's Motion for Summary Judgment on the Administrative Record (Dkt. No. 103) is **GRANTED**; and it is further

**ORDERED** that defendants' Motion for Summary Judgment on the Administrative Record (Dkt. No. 101) is **DENIED**.

The Clerk is directed to enter judgment in favor of plaintiff in accordance with Rule 58 of the Federal Rules of Civil Procedure.

It is **SO ORDERED**.

/s/
_____
Michael S. Nachmanoff
United States District Judge

September 2, 2022
Alexandria, Virginia